

# THE ATTORNEY GENERAL
## OF TEXAS

JIM MATTOX
ATTORNEY GENERAL

December 21, 1990

Honorable Chet Brooks
Chairman
Health and Human Services
    Committee
Texas State Senate
P. O. Box 12068
Austin, Texas    78711

Honorable Bob McFarland
Chairman
Criminal Justice Committee
Texas State Senate
P. O. Box 12068
Austin, Texas    78711

Opinion No. JM-1270

Re: Duty to cover care and treatment received for chemical dependency provided in chemical dependency treatment centers as defined in article 3.51-9, section 2A, of the Texas Insurance Code (RQ-2083)

Dear Senators Brooks and McFarland:

You each ask the same two questions concerning the application of article 3.51-9 of the Texas Insurance Code. We are advised that these questions relate primarily to group health insurers subject to chapter 3 of the Texas Insurance Code. See Ins. Code arts. 3.50 to 3.51-13.

You ask first whether section 2A of article 3.51-9 prohibits the denial of coverage for treatment received for chemical dependency in a chemical dependency treatment center rather than in a general hospital licensed by the Texas Department of Health.[1] You also ask whether an

---

1. For purposes of article 3.51-9, the phrase "chemical dependency" includes psychological or physical dependence on or addiction to alcohol or a controlled substance. Ins. Code art. 3.51-9, § 2(1). Section 2A defines a "chemical dependency treatment center" as a facility that provides a program for the treatment of chemical dependency according to a written plan approved and monitored by a physician. The facility providing chemical dependency treatment must also be either:

(Footnote Continued)

insurance company that issues group health insurance policies or contracts can define or interpret the term "hospital" in those policies or contracts to mean only a general hospital licensed by the Texas Department of Health and use that definition or interpretation to deny coverage for chemical dependency treatment provided in a chemical dependency treatment center.

Based on the legislative history as well as the current wording of article 3.51-9, we conclude that group health insurers issuing policies or contracts within the scope of article 3.51-9 cannot deny coverage for chemical dependency treatment provided in a chemical dependency treatment center as defined in section 2A because such treatment was not provided in a hospital licensed by the Texas Department of Health. We also conclude that such a denial of coverage is prohibited even if the insurer defines or interprets the term "hospital" in its group health insurance policies or contracts to mean only a general hospital licensed by the Texas Department of Health.

As originally enacted in 1981, article 3.51-9 stated that certain providers of group health insurance or other health coverage in this state "shall offer and make available" to their insureds "benefits for the necessary care and treatment of alcohol and other drug dependency that are not less favorable than for physical illness generally." Acts

---

(Footnote Continued)

(1)  affiliated with a hospital under a contractual agreement with an established system for patient referral;

(2)  accredited as a chemical dependency treatment facility by the Joint Commission on Accreditation of Hospitals;

(3)  licensed as a chemical dependency treatment program by the Texas Commission on Alcohol and Drug Abuse; or

(4)  licensed, certified, or approved as a chemical dependency treatment program or center by another state agency having legal authority to so license, certify, or approve.

See Ins. Code art. 3.51-9, § 2A.

1981, 67th Leg., 1st C.S., ch. 7, § 1, at 63. The 1981 act also required that "benefits so provided shall be determined as if necessary care and treatment in an alcohol or other drug dependency treatment center were care and treatment in a hospital." Id. at 64.

In Attorney General Opinion JM-5 (1983), we held that the 1981 act required a provider of a group health insurance policy or contract within the scope of the act to offer and make available to their insureds benefits for alcohol and other drug dependency subject to their rejection. In addition, we construed the language of the 1981 act stating that benefits provided for treatment in an authorized alcohol or other drug dependency treatment center constituted "care and treatment in a hospital" to mean that insurers within the scope of the act could not discriminate against authorized alcohol and other drug dependency centers and thus could not deny coverage for treatment provided by such centers on the basis that they were not hospitals. Furthermore, relying on section 3 of article 3.51-6 of the code, which states that chapter 3 insurers may not require services to be rendered by a particular provider, we also held that chapter 3 insurers must provide coverage for drug dependency treatment provided in any authorized center.

Subsequent to our opinion, the legislature in 1985 passed Senate Bill 601 and thereby amended article 3.51-9. Acts 1985, 69th Leg., ch. 632, § 12, at 2338. Section 12 of Senate Bill 601 made the following two major changes to article 3.51-9:

> (1) restricted article 3.51-9 to the care and treatment of alcohol dependency by deleting all references to care and treatment for other drug dependency; and

> (2) required coverage of the care and treatment of alcohol dependency by stating that insurers and other health care providers within the scope of the act 'shall provide' benefits for the care and treatment of alcohol dependency and not just 'offer and make available' such coverage subject to rejection by the insured.

See id.; see also Bill Analysis, C.S.S.B. 601, 69th Leg. (1985) (bill mandates coverage for alcohol dependency by

amending existing language to require the provision of  such benefits).[2]

In 1989 the legislature  passed Senate Bill 911  during the regular session and thereby expanded the application  of article 3.51-9 to the care and treatment of chemical  dependencies other than alcohol.  Acts 1989, 71st Leg., ch. 1097, § 1, at 4510.  Section  2A, as amended  by Senate Bill  911, mandates that  insurers,[3] certain  nonprofit  hospital  and medical service  plan corporations,  and health  maintenance organizations providing  group health  coverage as  well  as various self-funded or  self-insured health insurance  plans or arrangements

> shall provide, under such group insurance policies or contracts and such  plans  or arrangements providing  hospital and  medical coverage or services on an expense  incurred, service, or prepaid  basis, benefits for the necessary care and treatment of chemical dependency that are  not less favorable than for physical illness generally, subject  to the same  durational limits,  dollar  limits, deductibles, and coinsurance factors.
> (Emphasis added.)

---

2.   Section 12 also amended article 3.51-9 to expressly exclude certain types  of policies.  Excluded  in 1985  were various self-funded  or self-insured  plans or  arrangements with 250 or  less members, individual  insurance and  health maintenance organization  policies,  and health  insurance policies only  providing  cash  indemnity for  confinement benefits,  supplemental or  limited benefit  coverage,  or coverage for specified diseases or accidents, or  disability income coverage.  See also Acts 1985, 69th  Leg., ch.  805, § 1, at 2848 (also amending article 3.51-9 to affect changes indicated in text and  this footnote).  The current  wording of article 3.51-9  excludes the same  small, individual,  or limited benefits policies.  Ins. Code art. 3.51-9, § 2A.

3.   Section 1 of article 3.51-9 states that one of  the purposes of  the statute  is  to  provide  consumers  with benefits for the treatment  of chemical dependency in  group health insurance policies or  contracts.  That section  also provides that such benefits are to be provided consumers  of group health coverage  provided by  health  maintenance organizations and certain self-funded or self-insured plans.

In accordance with section 2A, "benefits so provided shall be determined as if necessary care and treatment in a chemical dependency treatment center were care and treatment in a hospital."

The legislative history available with regard to Senate Bill 911 and the House's companion bill, House Bill 954, establishes that the legislature intended to require providers within the scope of article 3.51-9 to provide coverage for chemical dependency treatment similar to the coverage required in 1985 for treatment of alcohol dependency. See Bill Analysis, S.B. 911, 71st Leg. (1989) (expands 1985 mandate "to include mandatory coverage of 'chemical' dependencies"); House Research Organization's Daily Floor Report, Part Two, at 43 (May 4, 1989) (House Bill 954 amends article 3.51-9 to require coverage for the treatment of alcohol and other chemical dependencies).[4]

As mentioned above, the current language of section 2A of article 3.51-9 states that providers within the scope of the article "shall provide . . . benefits for the necessary care and treatment of chemical dependency that are not less favorable than for physical illness generally" and that "benefits so provided shall be determined as if necessary care and treatment in a chemical dependency treatment center were care and treatment in a hospital." This statutory language clearly indicates the legislature's intent to mandate provision of chemical dependency benefits and also prohibit chapter 3 group insurers from denying coverage for treatment provided in a chemical dependency treatment center on the basis that such a center is not a general hospital licensed by the Texas Department of Health. See Attorney General Opinion JM-5, at 3 (construing almost identical language and reaching similar conclusion).

---

4.   To facilitate the transition to expanded coverage, section 2 of Senate Bill 911 delayed the effective date of the 1989 amendments to January 1, 1990. In particular, section 2 provided that the amendments applied only to policies, contracts, or other arrangements within the scope of the article that were "delivered or issued for delivery or renewed in this state on or after January 1, 1990, or subject to collective bargaining agreements . . . entered into or renegotiated on or after January 1, 1990." Acts 1989, 71st Leg., ch. 1097, § 2, at 4512; see also id. § 3(b) (for certain exceptions regarding current litigation).

The legislative history of article 3.51-9 reinforces this conclusion. As summarized above, the legislature first changed article 3.51-9 from a provision that merely mandated providers within the scope of the article to offer coverage for certain drug dependency treatment even if the treatment was provided in alcohol and other drug dependency treatment centers to a provision in 1985 that mandated actual coverage of alcohol dependency treatment even if provided in authorized treatment centers. Second, the legislature in 1989 expanded the coverage mandated in 1985 for alcohol dependency treatment to include the care and treatment of chemical dependencies other than alcohol. At no point does the legislative history indicate any legislative intent to allow a chapter 3 group insurer to discriminate against chemical dependency treatment centers because they are not hospitals, or in particular, not hospitals licensed by the Texas Department of Health. In fact, while amending other language in article 3.51-9 in 1985 and 1989, the legislature left unchanged the statutory language referring to treatment in a dependency center as if it were care and treatment in a hospital. As mentioned in our earlier discussion of Attorney General Opinion JM-5, this language supports the conclusions therein that the legislature did not intend insurers within the scope of article 3.51-9 to be free to discriminate against authorized drug dependency treatment centers, and thus, that such insurers could not deny coverage for treatment provided in such centers on the basis that they were not hospitals.

In addition, section 2A of article 3.51-9 requires authorized treatment centers to be affiliated with certain hospitals or satisfy certain accreditation or licensing standards. See supra, note 1 at 1. Licensing by the Texas Department of Health is not one of those standards. While the legislature amended section 2A in 1989 to include provision for detailed regulatory standards for chemical dependency treatment, its amendatory language neither authorized the regulatory addition of a standard requiring authorized centers to be hospitals licensed by the Texas Department of Health nor the imposition of such a limiting standard by chapter 3 group insurers in their group policies or contracts. Acts 1989, 71st Leg., ch. 1097, § 1, at 4511 (State Board of Insurance and Texas Commission on Alcohol and Drug Abuse shall adopt standards on benefit costs, treatment periods, and review procedures).

A brief filed in response to your request addresses the application of article 3.51-9 to chapter 3 insurers as well as certain other health care providers. As a result, you have asked that we address generally the application of the

article to other major group health care providers.   We provide the following discussion  to assist you in  applying article 3.51-9.

As mentioned above, article 3.51-9 applies to nonprofit hospital and  medical  service plan  corporations providing group health coverage that are subject to chapter 20 of  the Insurance Code.  As stated in Attorney General Opinion JM-5, although those  corporations are  statutorily authorized  to contract with  specific  providers, they  still  must  treat authorized treatment  centers  like  hospitals  under  their contracts unless those contracts are expressly excluded from article  3.51-9.   Attorney  General  Opinion  JM-5  at  4-5 (citing Ins.  Code arts.  20.01, 20.11,  20.12); see supra, note 2  at 4  for  statutory exclusions.   Neither  the 1989 amendments to article 3.51-9  nor the subsequent  amendments to articles 20.11 and 20.12  lead us to change this  conclusion.  See Acts 1989, 71st Leg., ch. 7, § 1, at 276.

Attorney General Opinion JM-5 reached a similar conclusion with regard to health maintenance organizations providing group health coverage subject to article 3.51-9.  Id. at 5.  As noted in  that opinion, health maintenance  organizations are governed primarily by chapter 20A of the Insurance Code.  Id.  Our  conclusion with regard  to those  organizations relied  in particular  on article  20A.06(a)(3).   The current wording of  that article is  substantially the  same today and still authorizes health maintenance  organizations to arrange for required  services through health care  entities that contract with them.  Article 20A.14(g), which  was added in  1987, also  states  that no  type of  health  care provider licensed  or otherwise  authorized to  practice  in this state may be denied  the opportunity to participate  in the provision of health care  services to such an  organization solely on the basis of type of license or authorization held by  the  provider  if  the  organization  is  providing services within  the  provider's license  or  authorization. Given these  two  articles,  we  affirm  our  conclusion  in Attorney  General  Opinion  JM-5  that  health  maintenance organizations subject to article  3.51-9 may provide  treatment required by that  article solely through entities  with whom  they  contract  provided  that  authorized  treatment centers are  treated the  same as  hospitals.  Furthermore, we add  that  those  organizations may  not  discriminate against chemical dependency treatment  centers in  violation of article 20A.14(g).  See also  Ins. Code arts.  20A.02(r), 20A.09(f) added  and amended,  respectively, by  Acts 1985, 69th Leg., ch. 906, §§ 1,  5, at 3033, 3035 (article  3.51-9 applies to health maintenance organizations other than those

offering only coverage of specific single illnesses or injuries).[5]

In answer to your second question, article 3.51-9 prohibits group insurers from denying coverage for treatment received in an authorized center under policies or contracts subject to that article based on the definition or interpretation of the term "hospitals" in such policies or contracts to mean only a general hospital licensed by the Texas Department of Health. Contractual terms or conditions cannot frustrate insurance benefits that statutes guarantee, and any contractual attempt to void or narrow required coverage is ineffective. American Liberty Ins. Co. v. Ranzau, 481 S.W.2d 793, 796-7 (Tex. 1972); McCalla v. State Farm Mut. Auto. Ins. Co., 704 S.W.2d 518, 519 (Tex. App. - Houston [14th Dist.] 1986, writ ref'd n.r.e.); Hamaker v. American States Ins. Co. of Texas, 493 S.W.2d 893, 895 (Tex. Civ. App. - Houston [1st Dist.] 1973, writ ref'd n.r.e.).

To summarize, article 3.51-9 mandates the provision of chemical dependency benefits in group policies and contracts subject to that article. It also prohibits chapter 3 group insurers issuing policies or contracts subject to article 3.51-9 from denying coverage for treatment received in a chemical dependency treatment center rather than in a general hospital licensed by the Texas Department of Health. Furthermore, article 3.51-9 prohibits such a denial of coverage even if the insurer defines or interprets the term "hospital" in those group policies or contracts to mean only certain hospitals such as those licensed by the Texas Department of Health.

---

5.   Since we have not in the past addressed the relationship of article 3.51-9 and the federal laws governing self-funded and self-insured health care plans such as the federal Employee Retirement Income Security Act of 1974, we decline to address that relationship in this opinion given the focus of your questions. See generally FMC Corp. v. Holliday, 59 USLW 4009 (U.S. Nov. 27, 1990) (No. 89-1048); Metropolitan Life Ins. Co. v. Massachusettes, 471 U.S. 724 (1985) (concluding state law not preempted by ERISA with regard to insured plans, but not deciding issue with regard to plans that self-fund or self-insure against risks).

## S U M M A R Y

Article 3.51-9 of the Texas Insurance Code mandates the provision of chemical dependency benefits in group policies and contracts subject to that article.  Article 3.51-9 applies to group insurers subject to chapter 3 of the code and prohibits those insurers who issue policies or contracts subject to article 3.51-9 from denying coverage for treatment received in a chemical dependency treatment center rather than in a general hospital licensed by the Texas Department of Health.  Furthermore, article 3.51-9 prohibits such a denial of coverage even if the insurer defines or interprets the term "hospital" in group policies or contracts subject to the article to mean only certain hospitals such as those licensed by the Texas Department of Health.

Very truly yours,

JIM MATTOX
Attorney General of Texas

MARY KELLER
First Assistant Attorney General

LOU MCCREARY
Executive Assistant Attorney General

JUDGE ZOLLIE STEAKLEY
Special Assistant Attorney General

RENEA HICKS
Special Assistant Attorney General

RICK GILPIN
Chairman, Opinion Committee

Prepared by Celeste A. Baker
Assistant Attorney General